IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | |
|---|---|
| CHRISTY WALLACE, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>NEW DIRECTION IRA, INC., *et al.*,<br><br>    Defendants. | Case No. 2:24-cv-02007-TC-ADM |

### DEFENDANT MAINSTAR TRUST COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AND TO COMPEL ARBITRATION

In support of its Motion to Dismiss under Fed. R. Civ. P. 12 (b)(1) and 12 (b) (6) and to Compel Arbitration, Defendant Mainstar Trust Company (hereinafter "this Defendant" or "Mainstar") states and shows as follows:

### INTRODUCTION

Defendants New Direction, IRA ("ND") and New Direction Trust Company ("NDTC") moved to dismiss this case and to compel arbitration based on an arbitration provision contained in the NDTC Custody and Account Agreements ("Custody Agreements" or "Agreements") with Plaintiff. (Doc. 17). In the Complaint, Plaintiff alleges that in 2018 NDTC became Custodian and Administrator of all accounts administered by ND (including those accounts for which Mainstar was previously Custodian). (Doc. 1, ¶ 36). In their Motion to Compel Arbitration, ND and NDTC allege that Plaintiff's Custody Agreements contain a provision compelling Plaintiff to arbitrate disputes such as those

63509953v2

asserted in the Complaint. (Doc. 17, pp. 6-9 and Doc. 17-1 at p. 3 of Ex. 1-A, ¶¶ 8.2, 8.3, 8.4 and 8.5).[1]

The claims against Mainstar are closely intertwined with those asserted against ND and NDTC. Counts One, Two, Three, Four, Five, Six, Seven, and Eight allege, based on the same operative facts (which as they relate to Mainstar are denied), that all of ND, NDTC and Mainstar are liable to Plaintiff jointly for Fraud, Fraud Through Silence, Negligence, Negligent Misrepresentation, Negligent Nondisclosure, Breach of Fiduciary Duty, Violation of the California Consumer Legal Remedies Act, and Violation of California Unfair Competition Law. No separate and distinct acts are alleged against Mainstar and no separate and singular counts are alleged as to Mainstar only. *See generally* (Doc. 1).

As set forth more completely below, just as the claims against ND and NDTC must be arbitrated, the claims against Mainstar must be arbitrated because: (1) Plaintiff is estopped from refusing to arbitrate – Plaintiff's claims against ND and NDTC are arbitrable and those claims are intertwined and interdependent with the claims against Mainstar; and (2) Mainstar is a third-party beneficiary of the arbitration provision because it applies to "any controversy related to the "agreement," any accountholder "transactions" and claims regarding "Custodial Assets." (Doc. 17, pp. 8-9; Doc. 17-1, p. 3, ¶ 8.4). The arbitration provision applies to all claims asserted and is binding on Plaintiff as to the claims asserted against Mainstar, just as the arbitration provision is binding on the intertwined and independent claims asserted against ND and NDTC.

---

[1] When referring to a page in one of ND and NDTC's exhibits, Mainstar will use the page number assigned by the ECF filing system.

63509953v2

**I.     BACKGROUND**

Mainstar (f/k/a First Trust Company of Onaga) is a non-depository Kansas limited powers trust company that accepts for custody various assets account holders of Self-Directed IRA Accounts or administrators on behalf of account holders place in Self Directed IRA (SDIRA) and/or Self-Directed Roth IRA (Roth SDIRA), (collectively SDIRA) accounts. (Ex. 1, Declaration of Bruce Olberding (filed herewith) at ¶¶ 3 and 4). ND was an SDIRA account administrator and NDTC is both an account administrator and account Custodian by virtue of its trust powers. *See* Complaint (Doc. 1 at ¶¶ 27, 36 and generally throughout Complaint) and ND and NDTC Motion to Compel Arbitration (Doc. 17 at p. 11). Prior to creation of NDTC, ND served only as Administrator of Plaintiff's SDIRA and engaged Mainstar as Custodian for SDIRA accounts it administered, including Plaintiff's SDIRA (Ex. 1, Olberding Decl. at ¶ 6). As Custodian for ND administered SDIRA accounts, Mainstar served as a non-depository trust company passive Custodian as described in Bruce Olberding's declaration and ND's notice letter of September 16, 2018. (Ex. 1, Olberding Decl. at ¶¶ 4-6 and Doc. 17-1 and 17-4). Mainstar's responsibilities as a passive Custodian ended on October 18, 2018 when ND transferred custody of all accounts it administered to NDTC. (Ex. 1, Olberding Decl. at ¶ 7).

The Plaintiff's Custody and Account Agreement[2] was created and administered by ND throughout the time Mainstar and later NDTC served as Custodian. The Custodial and Account Agreement attached as Docs. 17-1 and 17-4 to ND and NDTC's Motion to

---

[2] In this Memorandum, the term "Plaintiff" refers to the named Plaintiff in the lawsuit Christy Wallace. Mainstar does not agree that this lawsuit is susceptible to certification as a class action. As described in ND and NDTC's Motion to Compel Arbitration, the Plaintiff's accounts originated with ND and were administered by ND from inception. (Doc.17 at pp. 1-6; *also see* Doc. 17-4, Wallace 2016 application which with Doc. 17-1 are the Custody and Account Agreement).

63509953v2

3

Compel Arbitration describes the Claims subject to Arbitration. The provision in the 5305-A (traditional IRA) Custody and Account Agreement describing the scope of claims to be arbitrated is as follows:

> 8.4  **Claims Subject to Arbitration included but are not limited to**: Any controversy arising out of or relating to this agreement or the breach thereof, or to the IRA or any transactions authorized by you and/or your agent as well as any claim that may arise regarding your Custodial Assets.

ND Motion to Compel Arbitration Ex. 1 (Doc. 17-1, pp. 3).[3] Plaintiff's claims all relate to the SDIRA Account and a controversy regarding the "agreement", "accountholder transactions" and "Custodial Assets." The Agreement acknowledges that the Custodian (originally Mainstar and subsequently NDTC) did not have any responsibility for tax, legal, or investment advice nor for any loss in the account and acknowledge that the account holder has "complete responsibility" for any investment in the account. (ND and NDTC Motion to Compel, Doc. 17, pp. 4-6; Doc. 17-4 at pp. 2-6). The Custody and Account Agreement relates to the entire relationship between all account administrators (ND) and all Custodians (NDTC and Mainstar). (Doc. 17-1 and 17-4).

Because the claims against Mainstar (Counts 1 through 8) are jointly asserted against ND and NDTC, the claims and underlying facts are inexorably intertwined with claims against ND and NDTC to such an extent, that those claims are arbitrable, Plaintiff is estopped to deny arbitration of claims against Mainstar. Further, Paragraph 8.4 of the Custody and Account Agreement requires arbitration of claims and controversies regarding the agreement, breach, transactions and Custodial Assets. Due to the scope

---

[3] Mainstar understands ND and NDTC's references to ¶¶ 9.2-9.5 in Doc. 17 to actually be references to ¶¶ 8.2-8.5 in Doc. 17-1, the arbitration provisions.

of Paragraph 8.4 and the allegations in the Complaint, Mainstar is a third-party beneficiary of the Custody and Account Agreement.

## II. PLAINTIFF'S CLAIMS MUST BE RESOLVED BY ARBITRATION AND THUS SHOULD BE DISMISSED – THE FAA AND FEDERAL LAW CONTROL

Federal substantive law governs whether Plaintiff's claims are subject to arbitration because those claims affect interstate commerce. *See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *In re Cox Enters. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016)). Plaintiff alleges she is a resident of California (Doc. 1 at ¶ 8), ND and NDTC are located in Colorado,[4] and Mainstar is incorporated in and has its principal place of business in Kansas (Ex. 1, Olberding Decl. at ¶ 3). The Agreements and transactions under the Agreements involved interstate commerce.[5] Accordingly, the Federal Arbitration Act ("FAA") governs the arbitrability of Plaintiff's claims. 9 U.S.C. 2 and 4. When the FAA applies, it preempts any contrary state law. *Southland Corp. v. Keating*, 465 U.S. 1, 10-16 (1984).

To determine whether a claim is subject to arbitration, a court must resolve two issues: (i) whether the parties agreed to arbitrate, and (ii) whether the dispute at issue is within the scope of the parties' agreement. *See Brayman v. Key Point Gov't Solutions*, 83 F. 4th 823 (10th Cir. 2023). Both the FAA and case law dictate that the standard for determining arbitrability is not high and once determined arbitrable the District Court is mandated to order arbitration of the dispute. 9 U.S.C. 4. *See, Chiron Corp. v. Ortho*

---

[4] NDTC is incorporated in Kansas but avers that its principal place of business is Colorado (Doc. 17, p.7, fn. 3. and Doc. 17-9, 9/18/18 letter).

[5] For further discussion on this point see ND Motion to Compel Arbitration at pp. 7-8 (Doc. 17 at pp 7-8).

*Diagnostic Sys.,* 207 F.3d 1126, 1130 (9th Cir. 2000); *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

In determining whether the parties agreed to arbitrate, the parties' intentions are construed in favor of finding arbitrability. *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). If the parties' agreement contains an arbitration provision, "'there is a presumption of arbitrability.'" *Id.* (quoting *AT & T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986)). "'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.*, (quoting *Moses H. Cone*, 460 U.S. at 24–25); *see also, Thompson v. Ford of Augusta, Inc.*, 2019 WL 652396 (D. Kan. 2019).

Analyzing arbitrability based on the phrase "arising in connection with" the parties' contract, the Ninth Circuit has stated that "[t]o require arbitration, [plaintiff]'s 'factual allegations need only 'touch matters' covered by the contract containing the arbitration clause … .'" *Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th. Cir. 1999) (quoting *Mitsubishi Motors v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985) and other cases). Further, a broad arbitration provision covers disputes under the contract and all issues in dispute. *See Feil v. MBNA America Bank,* 417 F. Supp. 2d 1214, 1219 (D. Kan. 2006).

Here, ND and NDTC have demonstrated in their Motion to Compel Arbitration that the matters in dispute more than touch Plaintiff's Custody and Account Agreement but are fundamental to the Agreement and in particular the claims subject to arbitration. (Doc. 17-1, ¶ 8.4). Those claims are arbitrable. Likewise, the claims against Mainstar are arbitrable because Plaintiff is estopped to deny arbitrability. Plaintiff's claims and SDIRA

account depend on and presume the agreement containing the arbitration provision and the claims pleaded against Mainstar are interdependent with the claims pleaded against ND and NDTC. Further, Mainstar is a third-party beneficiary of the Agreements containing the arbitration provision.

### III. PLAINTIFF'S CLAIMS AGAINST MAINSTAR MUST BE ARBITRATED – PLAINTIFF IS ESTOPPED TO DENY ARBITRABILITY BECAUSE THE CLAIMS AGAINST MAINSTAR ARE DEPENDENT ON THE CUSTODY AND ACCOUNT AGREEMENT AND INTERDEPENDENT WITH CLAIMS AGAINST ND AND NDTC

Plaintiff's Agreement (Doc. 17-1, p. 3) contains an arbitration provision. Although the Agreement filed with ND and NDTC's Memorandum post-dates the time when Mainstar was Custodian for Plaintiff's account, Plaintiff and ND and NDTC agree that the account incepted and the assets in custody were acquired when Mainstar was Custodian. (*See* Account Application, Doc. 17.4, a part of the Custody and Account Agreement). Further, the misconduct Plaintiff alleges against Mainstar is intertwined and interdependent with the misconduct alleged against ND and NDTCO. On these averments, Plaintiff is estopped to deny arbitrability.

In *Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008 (10th Cir. 2021) the Tenth Circuit Court of Appeals adopted a two-part test to determine whether claims against a non-signatory to an agreement containing an arbitration clause may enforce the clause, estop the other party from avoiding arbitration, and require the claims against it to be arbitrated. Under the test, claims against non-signatories are arbitrable when: (1) the claims reference the existence of an agreement containing an arbitration clause and arise out of and relate to the agreement; and (2) raise allegations of substantially interdependent misconduct by signatories and non-signatories.

In *Reeves,* the court concluded that the first prong of the test is satisfied when the claims make reference to or presume the existence of a written agreement containing an arbitration clause. *Id.* at 1013. The second test is satisfied when the claimant (a signatory to the agreement) raises substantially interdependent claims against the signatory and the non-signatory. *Id.* The *Reeves* plaintiffs brought an FLSA collective wage and hour action against both their direct employer – a staffing entity and the staffing entity's customers. Plaintiffs contracted with the employer but performed work for the employer's customers. The plaintiffs' employment agreements with the staffing entity contained arbitration provisions; however, the plaintiffs had no contracts with the staffing entity's customers. The *Reeves* Court held that an arbitration clause may be **invoked by or against** a non-signatory where the claims are so intertwined and interdependent with claims against a signatory that the parties are estopped from avoiding arbitration, **even where the claim involving the non-signatory does not allege a violation of the underlying agreements**. *Id.* at 1013. The Tenth Circuit held that the claims against the employer and against the staffing entity's customers were subject to arbitration because they were substantially interdependent - the claims against the third parties necessarily depended on the existence of an employment agreement between the plaintiffs and the employer. *Id.* at 1015. Here, as in *Reeves*, the claims against all Defendants are completely interdependent and intertwined. The Tenth Circuit concluded the claims were substantially interdependent and referenced or presumed the existence of employment agreements with arbitration provisions.

The *Reeves* analysis is applicable here and, as in *Reeves*, Plaintiff should be compelled to arbitrate her claims against Mainstar. As described in ND and NDTC's

Motion to Compel Arbitration, but for the Custody and Account Agreement (Doc. 17-1 and 17-4), Plaintiff would not have SDIRAs. None of ND, NDTC nor Mainstar would have a relationship with Plaintiff but for the Custody and Account Agreement. Whether asserted in the Complaint directly or not, the Agreement's existence is undisputed and further must at a minimum be presumed because absent a 5305-A, no SDIRA account can exist. *See* 26 U.S.C. 408 and 26 CFR 1-408. The first prong of the *Reeves* test is satisfied. Further, the claims against Mainstar and ND and NDTC are interdependent as required under *Reeve's* second prong. In counts 1 through 8, inclusive, Plaintiff alleges Mainstar, ND, and NDTC acted fraudulently and negligently, breached fiduciary duties, and violated California consumer protection laws (Doc. 1, Counts 1-8). Further, as pleaded throughout the Complaint, Plaintiff refers to the Defendants without reference to particular acts or omissions attributable to Mainstar alone. The claims are interdependent. The second prong of the *Reeves* test is satisfied.

The Supreme Court and other Circuit Courts of Appeal have discussed and relied on the presence of interdependent claims in considering arbitrability of claims made against non-signatories. Many of these decisions focus on equitable and fairness considerations. *See PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003); and *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 975 (11th Cir.2002), reversed on other grounds sub nom. The *In Re Humana* Court noted the importance of interdependent claims when it concluded estoppel is appropriate "… when they [parties enforcing arbitration] establish that the claims against the non-signatory are intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause*."* 285 F.3d at 975. That is certainly the case here because

without the SDIRA Agreement there is no relationship between any of the parties. Further, all of the claims relate to Custodial Assets.

The Fifth Circuit summarized these concepts best in *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (applying equitable estoppel on the basis of intertwined claims). In sum, the Fifth Circuit concluded the Plaintiffs in *Grigson* could not deny the existence of the agreement, while at the same time sue for benefits created by the same agreement, including the breach of duties in relation to Plaintiffs' accounts. The *Grigson* Court aptly summarized what Plaintiffs seek here – to *have their cake and eat it too* – The Court wrote:

> "In short, although arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory, a signatory to that agreement cannot, in those instances described in *MS Dealer Serv. Corp.*, "have it both ways": it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Grigson,* 210 F.3d at 528.

Decisions such as those in *Reeves* and *Grigson* also promote the twin federal policies in favor of arbitration and judicial economy. *Id.* at 527.

Finally, Kansas courts have concluded that on both estoppel and practical grounds, intertwined claims should be adjudicated in an arbitral forum when one of the parties is signatory to an agreement with an arbitration provision. Where, as here, the claims are intertwined parallel litigation would be, in the Kansas Court of Appeals words "senseless." In *Hemphill v. Ford Motor Co.*, 41 Kan. App. 2d 726, 729 (2009), the court considered claims brought against an automobile dealer, a finance company and the auto manufacturer. Only the finance company and dealer agreement contained an arbitration

clause. The non-signatory manufacturer enforced the arbitration provision. The Kansas Court of Appeals explained the need for a single forum succinctly.

> In sum, the Hemphills claimed that the car made by Ford leaked from the start, and that Ford, with the help of its dealer Fenton Motors, didn't fix it. The Hemphills claimed the same right to revoke acceptance of the car against both Ford and Fenton Motors. And the Hemphills' claims against Chrysler Financial were all based on the theory that Chrysler Financial's interests were subordinate to the Hemphills' claims and defenses against Ford and Fenton Motors. Because the Hemphills agreed to arbitrate their claims against Fenton Motors and Chrysler Financial, it makes sense to require that the closely connected claims against Ford be arbitrated too. **It would be senseless to have parallel arbitration and court proceedings both devoted to determining whether and why the car leaked, whether the car could be fixed, and what was said by whom and to whom throughout the parties' dealings**."

*Id.* at 739 (emphasis added). Due to the closely intertwined and interdependent claims alleged in this lawsuit, the same logic applies here. All claims should be arbitrated, and Plaintiff is estopped from denying arbitration as to her claims against Mainstar.

### IV. AS CUSTODIAN, MAINSTAR IS AN INTENDED BENEFICIARY OF THE AGREEMENTS' ARBITRATION CLAUSE AND CAN ENFORCE ARBITRATION AGAINST THE SIGNATORY PLAINTIFF

A party who is not a signatory to a contract containing an arbitration clause may enforce the arbitration provision under a third-party beneficiary theory where it was the intention of the signatories to benefit the non-signatory party. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S. Ct. 1896, 1898, 173 L. Ed. 2d 832 (2009). The issue of whether a non-signatory can enforce a provision under this theory is governed by state law contract interpretation principles. *Id.*; *Schneider v. SRC Energy, Inc.*, 424 F. Supp. 3d 1094, 1099–100 (D. Colo. 2019). The Agreements are governed by Kansas law. (Doc. 16-1 at 8.1). As discussed below, Kansas law allows a third-party to enforce contract terms made for that party's benefit, even though he or she was not a party to the

transaction. *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 793, 107 P.3d 1219, 1230–31 (2005).

Whether a party can claim to be third-party beneficiary to a contract's arbitration clause depends on the intent of the contracting parties. *Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 698 (10th Cir. 2012) (applying New Mexico law on issue of whether third party could enforce arbitration clause). The intent can be derived from the contract itself or some other evidence that the non-signatory is an intended beneficiary. *Id.*

Even though Mainstar was not Custodian after October 18, 2018 when the NDTC Custody Agreement was distributed, it is clear from the plain language of the Custody Agreement that any Custodian is intended to be protected by the Agreement's arbitration provisions. Section 8.4 broadly describes the scope of clams covered:

> **Claims Subject to Arbitration included but are not limited to:** Any controversy arising out of this agreement or the breach thereof, or to the IRA or any transactions authorized by you and/or your agent as well as any claim that may arise regarding your Custodial Assets.

(Doc. 17-1 at pp. 3). The arbitration provision states that it applies to "any controversy" regarding the IRA, "any transactions authorized by you and/or your agent," and to "any claim that may arise regarding your Custodial Assets." (Doc. 17-1, ¶ 8.4). Plaintiffs' claims relate to the – "custodial assets" – precious metals and the depository where those metals were held (Doc. 17-1, ¶ 8.4); "transactions authorized by Plaintiffs", the original transactions purchasing precious metals, which occurred when Mainstar was custodian (Doc. 17-1, ¶ 8.4; Docs. 17-5 and 17-6) and, of course, are in regard to the SDIRA. The Agreement was clearly intended to apply to claims made by account holders relating to the Agreement, the SDIRAs, the transactions, and the Custodial Assets. Further, the

Agreement was clearly intended to encompass claims made against the Custodian.[6] *See* (Doc. 17-1, preamble). The Complaint makes no distinction between claims against Mainstar from those made against the successor Custodian. (Doc. 1 at Counts 1-8). Because the plain language of the Agreements expresses an intent that all claims relating to the SDIRA accounts, transactions, and the Custodial Assets must be submitted to arbitration, Mainstar has a right to enforce the arbitration provision. *See Byers v. Snyder*, 44 Kan. App. 2d 380 (2010) (intended beneficiary of a contract may enforce the contract even if the beneficiary played no part in the consideration for the contract).

## CONCLUSION

Plaintiff's lawsuit is premised on and entirely dependent on the existence of the SDIRA Custody and Account Agreement. Absent the Custody and Account Agreement, including the 5305-A, Plaintiff would not have an SDIRA. Plaintiff's Custody and Account Agreement contains an enforceable binding arbitration provision. Mainstar is a third-party beneficiary of the agreement. Plaintiff's claims against Mainstar are intertwined with claims against the other defendants, are dependent on the Agreement, the Plaintiff's transactions, and Custodial Assets. This Court should dismiss Plaintiff's claims and compel arbitration of all claims against all Defendants, including those claims pleaded against Mainstar.

---

[6] Likewise, the Custody and Account Agreement contemplates that the Agreement may be unilaterally amended, and the Custodian may be replaced by a Successor Custodian under the same, or a different, agreement (Doc. 17-1, ¶¶ 8.8 and 8.9; and Doc. 17-4).

        Respectfully Submitted,

        LATHROP GPM LLP

        /s/ *Richard N. Bien*
        Richard N. Bien (KS #70101)
        Carrie E. Josserand (KS #18893)
        Brian C. Fries (KS #15889)
        2345 Grand Blvd., Suite 2200
        Kansas City, Missouri 64108
        Telephone: 816.292.2000
        Telecopier: 816.292.2001
        Richard.Bien@lathropgpm.com
        Carrie.Josserand@lathropgpm.com
        Brian.Fries@lathropgpm.com

        ATTORNEYS FOR DEFENDANT
        *Mainstar Trust Company*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 12, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will serve all parties through the Notice of Electronic Filing.

        */s/ Richard N. Bien*
        Attorney for Defendant
        *Mainstar Trust Company*